UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JEANNE ST. MICHEL, Plaintiff, | : | |
| v. | : | C.A. No. 24-432-JJM |
| STATE OF RHODE ISLAND, DEPT. OF HUMAN SERVICES, DISABILITY DETERMINATION SERVICES, Defendant. | : | |

**MEMORANDUM AND ORDER**
**(Redacted Public Version[1])**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court in this employment disability discrimination case brought pursuant to § 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, are two discovery motions:

- Plaintiff's Motion to Quash Defendant's Subpoenas and For a Protective Order (ECF No. 19); and
- Third-Party Butler Hospital's Motion to Quash Subpoena Duces Tecum (ECF No. 21).[2]

## I. <u>Background</u>

Both motions pertain to third-party discovery propounded by Defendant, State of Rhode Island, Department of Human Services, Disability Determination Services ("DDS"), to obtain

[1] Because Plaintiff's motion to quash was briefed under seal, a copy of this decision was provided to the parties in advance of issuance in order for them to make redaction requests. Based on its determination that the inclusion of confidential healthcare information justifies redaction during the discovery phase of the case, the Court is now issuing this memorandum and order in a public redacted version and a sealed non-redacted version.

[2] The subpoena addressed to Butler Hospital is among the sixteen targeted by Plaintiff's motion to quash. Butler Hospital's separate motion to quash is based on R.I. Gen. Laws § 40.1-5-1, *et seq.*, and 42 U.S.C. § 290dd-2; these statutes bar production of such records except pursuant to an order of the Court (based on specified findings) in the absence of written consent from Plaintiff, which she has not provided. Because the Court's determination of Plaintiff's motion to quash also resolves the Butler Hospital motion to quash, the Court conducted a hearing only on Plaintiff's motion to quash.

such of Plaintiff's medical records as are pertinent to her claim. Plaintiff alleges that, since at least 2016, she suffered disabling health symptoms[3] when she was required to work at the DDS building but her symptoms declined and vanished whenever she worked remotely. She contends that "over the past several years," DDS has "tortured and gaslit" her and inflicted "prolonged mistreatment" by its denial of her request for the accommodation of fully remote work due to an array of disabilities and "well-documented medical conditions." First Amended Complaint, ECF No. 31 ¶¶ 2,18-23.[4] DDS denies all of Plaintiff's allegations, including vehemently denying that the physical environment of the DDS office is the cause of her disabling symptoms; it also asserts as defenses, *inter alia*, that it acted in good faith and that Plaintiff's claims are subject to laches/waiver and barred by the election of remedies doctrine. ECF No. 8.

In response to DDS's discovery, Plaintiff produced a self-curated heavily redacted set of medical records, limited to the period beginning in 2021 despite the allegations in the Complaint that relevant symptoms began in 2016. DDS represents, and the Court accepts, that the redactions in this limited production are so extensive that it is impossible to ascertain even if a record is relevant to the case or not. Further, it appears that this production entirely omits the critically relevant medical records necessary for DDS to test Plaintiff's factual allegation (which is foundational to her claim) that symptoms/diagnoses appeared and intensified when she worked in the DDS building and declined and disappeared when she worked remotely.

---

[3] The disabling conditions alleged are bronchitis, sinus infections, pneumonia, dizziness, coughing, respiratory infections, wheezing, shortness of breath, dysphonia, asthma, hoarseness, reactive airway disease, allergies, allergic rhinitis, allergic dermatitis, hives, sleep apnea, neck, shoulder and back pain, anxiety, depression and post-traumatic stress disorder. ECF Nos. 19 at 6-7; 25 at 2.

[4] For Plaintiff's claims, the Court is relying on the Amended Complaint. ECF No. 31. As of this writing, DDS's responsive pleading to the Amended Complaint is not yet due, so the Court is relying on DDS's answer to the original complaint for the defenses. ECF No. 8.

Because of the inadequacy of Plaintiff's production, DDS directed sixteen third-party subpoenas to each of the medical providers who treated Plaintiff for her disabling symptoms/diagnoses and requested complete medical records for what DDS alleges is the entire period Plaintiff has placed in issue – since 2016, plus a three-year period preceding the alleged onset of symptoms (that is, back to January 1, 2013). In light of Plaintiff's core allegation that, over the years since 2016, her symptoms surged when she worked at the DDS office, but declined or disappeared when she worked remotely, so that the absence (and/or decline) of symptoms, including the timing of such waxing and waning, is just as relevant as the presence and intensity of symptoms, the subpoenas simply asked for Plaintiff's entire medical record from each of the relevant providers, to include but not limited to, the allegedly disabling symptoms and diagnoses in issue. See e.g., ECF No. 19 at 9-11. The subpoenas did not ask the providers to undertake the task of trying to limit production to records reflecting the presence of specified symptoms or active diagnoses.

Focused on the lack of a limitation to a specified diagnosis or symptom, Plaintiff argues that enforcing the subpoenas as written will result in material containing a mix of treatment that is relevant and highly confidential treatment for conditions that are not relevant, such as [redacted]. This overbreadth is exacerbated in the circumstances of this case because Plaintiff obtained treatment for various conditions (some relevant and some not relevant) from providers working in a medical group or facility whose medical records are maintained as a unified whole. Plaintiff also argues that the time period covered by the subpoenas (back to 2013) is overbroad.

The procedural posture of this discovery is pertinent to what the Court must decide. All of the sixteen subpoenas in issue have been served, and documents responsive to most if not all

of them have been provided to DDS's counsel.[5] Because of Plaintiff's motion to quash and the related motion to quash filed by Butler Hospital, DDS has embargoed these materials; they have not been reviewed. The volume of this embargoed material is substantial. The crux of Plaintiff's motion to quash asks the Court to determine how fairly and proportionally to allow DDS to obtain what it needs from this material to defend this case, while protecting Plaintiff from intrusive review and use by DDS (which is still her employer) of highly confidential records that may be mixed in with the relevant material but are not conceivably relevant. That is, in the complex circumstances presented here, the Court is asked to make the practical determination of who should undertake the burdensome task of performing a page-by-page review to assess relevance, as well as how to maximize the protection of Plaintiff's privacy as that task is done.

Complicating discovery in this case is that Plaintiff launched her claim against DDS in tandem proceedings, not only this case, but also in a parallel case filed simultaneously in Superior Court.[6] In the Superior Court case, DDS prepared somewhat[7] parallel subpoenas for medical providers; those have not yet been served. Plaintiff's motion to quash the Superior Court subpoenas was granted in part by the Superior Court in an interlocutory order that issued

[5] During the hearing, DDS represented that it believed that many if not all subpoenas had been complied with; however, the Butler Hospital motion suggests that it has not yet complied. ECF No. 21 at 1. To the extent that it or any other subpoenaed provider has not yet complied with the subpoena as served, the Court's ruling today contemplates that each such provider must comply based on the temporal limits, post-production protocol and confidentiality order described in this Memorandum and Order.

[6] The parallel Superior Court case is <u>St. Michel v. State of RI, Department of Human Services, Disability Determination Services</u>, PC-2024-05662. In 2024, Plaintiff sued DDS in this Court for violating Section 504 of the Rehabilitation Act and in Superior Court for disability discrimination and failure to accommodate under *inter alia* the Americans with Disabilities Act ("ADA") and the Rhode Island Unfair Employment Practices Act ("FEPA"). Plaintiff is prosecuting what she contends are factually identical claims in state and federal court to avoid the State's immunity defense to her ADA and FEPA claims. ECF No. 19 at 8 n.2.

[7] Fourteen subpoenas were propounded in the Superior Court case seeking records back to 2006. ECF No. 23-1 at 4-5.

orally on April 16, 2026, limiting DDS to production of records from 2016 "related to a respiratory condition and the underlying emotional distress." ECF No. 23-1 at 12.

With the embargoed records responsive to the sixteen subpoenas served in this case for the most part already produced to DDS, Plaintiff's motion presents three options to solve the practical conundrum – how fairly, proportionally and efficiently to provide DDS with what it needs to defend this case while protecting Plaintiff from production and the use of highly confidential records that are not relevant to any claims or defenses.

First, Plaintiff contends that it is she who should unilaterally make the determination of relevance to DDS's defenses so that the limited self-curated heavily redacted production she has already provided (based on her contention that the relevant time period began in 2021 and that the only relevant issue is whether remote work posed an undue hardship for DDS) is sufficient.

Second, Plaintiff argues that the Court should perform an *in camera* review of what may well be thousands of pages of material embargoed by DDS and/or remaining to be produced to make its own medical and factual determination of relevance.

Third, Plaintiff urges that the subpoenas should be reissued to seek only records from 2016 that relate to "a respiratory condition and underlying emotional distress," ECF No. 23-1 at 12, as ordered by the Superior Court in the parallel case, leaving the providers to determine what is relevant to DDS's defenses (and likely resulting in a second round of motions for protective order from the providers). In support of the third approach, Plaintiff contends that this Court's independent consideration of her motion is cabined by the preclusive effect of the Superior Court Order, despite the Superior Court's failure to grapple with a fundamental (and practical) question – how fairly and efficiently to separate the wheat from the chaff in a unified medical record of a subpoenaed provider who was treating an array of relevant and irrelevant conditions where

records reflecting the absence of symptoms are equally as relevant as those reflecting the presence of disabling respiratory conditions and resulting emotional distress.

## II. Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). District courts generally exercise "broad discretion to manage discovery matters." Gluesing v. Prudentrx LLC, No. 24-cv-549-JJM-AEM, 2026 WL 508809, at *2 (D.R.I. Feb. 24, 2026) (internal quotation marks omitted). Discovery is designed to help define and clarify the issues and Fed. R. Civ. P. 26(b)(1) should be construed to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. Noel v. United Better Homes, LLC, Case No. 1:23-cv-00028-SJM-TLSM, 2025 WL 1330557, at *1 (D.R.I. Jan. 28, 2025).

Fed. R. Civ. P. 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Id. The Court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "[T]he burden of demonstrating good cause rests on the proponent of the protective order." Walker v. IHI Power Servs. Corp., C.A. No. 23-57 WES, 2025 WL 949239, at *2 (D.R.I. Mar. 28, 2025) (internal quotation marks omitted). Relatedly, Fed. R. Civ. P. 45(d)(1) requires that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Id.

When examining motions to quash, courts should weigh the need of the party seeking discovery against any undue hardships created by permitting it. Strike 3 Holdings, LLC v. Doe, Civil Action No. 25-cv-1152-ADB, 2025 WL 2323608, at *1 (D. Mass. Aug. 12, 2025). Among the appropriate factors for consideration by the court are the following: whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the preparation of the case. Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 66 (1st Cir. 2003).

## III. Factual Claims and Defenses

Since 1996, Plaintiff has been employed by the State; since 2016 and continuing to the present, she has worked for DDS as a supervisor of up to ten employees. ECF No. 31 ¶¶ 12-14. She alleges that from 2016 until 2020, she worked in-person in the DDS office building on Fountain Street in Providence, and "despite having no previous breathing problems nor any preexisting conditions," was "frequently sick and diagnosed" with various breathing conditions and infectious illness (such as flu, bronchitis and pneumonia) at least once resulting in an emergency room visit. Id. ¶¶ 17-19. In 2020 and 2021, she (together with all other DDS employees) worked from home due to the COVID-19 pandemic. Id. ¶¶ 20, 23. While working remotely, Plaintiff had no respiratory issues; this absence of symptoms caused her and "her medical providers" to believe that her prior "persistent respiratory illness" was due to the environment of DDS's Fountain Street office. Id. ¶¶ 21-25. As summarized by her primary care physician, Plaintiff had suffered from asthma and allergies since prior to 2016, for which she has seen "the appropriate specialists over the years," including ENT/allergists, pulmonary, sleep specialists, and urgent care providers. Id. ¶ 87. Throughout the lengthy period in issue, Plaintiff

alleges that her health quickly improved whenever she was not working in person at DDS's Fountain Street office. E.g., id. ¶¶ 97, 104, 108.

Based on this pattern, Plaintiff's primary care physician noted "recurrent medical problems" and "multiple infections during the year that required visits to the doctors, urgent care visits, multiple medications," and recommended the accommodation of entirely remote work. Id. ¶¶ 27, 29. In response, DDS moved Plaintiff's office to a different floor and required hybrid remote/in-person work, but the infectious respiratory diseases resumed whenever she was in the office. Id. ¶¶ 30-38. That is, the Complaint alleges a continuing pattern of symptoms flaring whenever Plaintiff was required to work in the office and subsiding and disappearing whenever she was at home, even for a short period. DDS, however, continued to require Plaintiff to work at least part of the time in the Fountain Street office building "in order to perform essential job functions." Id. ¶ 142.

Beginning in 2023, Plaintiff began mental health treatment related to working in "what she believes to be an unsafe and unhealthy environment which has been detrimental to both her physical and mental health." See id. ¶ 102 (when not working in office, mental health symptoms are not present). Consistent with the ongoing recommendation of her primary care physician and other specialists treating her physical conditions, Plaintiff's mental health provider recommended that she work from home due to multiple mental health diagnoses. Id. ¶¶ 102-03, 134. In 2026, these mental conditions resulted in Plaintiff being placed on Family and Medical Leave Act leave to attend an intensive partial hospitalization program at Butler Hospital. Id. ¶¶ 143-52.

## IV. Medical Discovery in Employment Discrimination Cases

A plaintiff alleging disability discrimination has waived her right to protection of medical information that could fairly be considered within the scope of the claims and defenses in the

pleadings. See Jones v. Fluor Facility & Plant Services, Inc., Civil Action No. 1:21-CV-00151-GNS-HBB, 2026 WL 208628, at *3 n.2 (W.D. Ky. Jan. 27, 2026) (by filing disability discrimination claim, plaintiff places disability and related medical condition at issue and waives any applicable privilege or statutory protections that medical records would have otherwise had). Thus, courts may limit medical record discovery in disability discrimination cases to conditions actually placed at issue. See Sobel v. Cmty. Access, Inc., No. 03Civ.5642 LAKMHD, 2007 WL 2076977, at *1 (S.D.N.Y. July 18, 2007) (footnote omitted) (in case arising under ADA, "[s]ince [plaintiff] is claiming that he was disabled as a result of sleep apnea and partial arm palsy, his medical history pertinent to those conditions is relevant and hence subject to discovery and is not protected by a physician-patient privilege. As for plaintiff's other physical conditions, defendants have not demonstrated their relevance to the remaining claim, and hence they are not subject to discovery on the current record."). Put differently, an allegedly disabled plaintiff does not necessarily surrender her entire medical history simply by bringing a disability discrimination claim. Karrani v. JetBlue Airways Corp., Case No. C18-01510 RSM, 2019 WL 2269818, at *2-3 (W.D. Wash. May 28, 2019) ("[F]or his general emotional distress claims, [plaintiff's] communications with his primary care doctor are not relevant."); Arjangrad v. JPMorgan Chase Bank, N.A., 3:10-CV-01157-PK, 2011 WL 13253324, at *7 (D. Or. Oct. 19, 2011) ("Any medical records unrelated to mental health are not discoverable because they are irrelevant to [plaintiff's] emotional distress allegations.").

On the other hand, *depending on the scope of what is in issue in a particular case*, courts also sometimes order that the entire medical history in a specified period is relevant and must be provided. See Butler v. Burroughs Wellcome, Inc., 920 F. Supp. 90, 92 (E.D.N.C. 1996).

> In an action under the ADA, a plaintiff's medical history is relevant in its entirety. It is impossible to answer the most basic questions, such as whether the plaintiff

> was generally foreclosed from similar employment by reason of a major life activity impairment, or otherwise qualified given a reasonable accommodation, or what a reasonable accommodation would have been, without full and complete access to the plaintiff's medical records. And since a defendant is entitled to defend the ADA action by claiming that plaintiff's inability to work without [an] accommodation is the result of something other than the claimed disability, discovery along such lines must also be permitted.

Id.; see Cherkaoui v. City of Quincy, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *3 (D. Mass. July 23, 2015) ("Plaintiff, bringing claims under the [ADA] . . . has clearly put his [medical] condition into issue[.]") (internal quotation marks omitted). The complete medical record is particularly relevant, and this Court has ordered production of it, when the absence of a diagnosis, symptom or treatment is just as relevant as its presence to the defense of a case. Mello v. Arruda, C.A. Nos. 23-479JJM, 23-480JJM, 2025 WL 1225220, at *4-5 (D.R.I. Apr. 28, 2025) (complete medical records for period in issue are highly relevant to defense that none of alleged catastrophic injuries occurred), adopted, 2025 WL 1433383 (D.R.I. May 19, 2025); see Nshimiyimana v. Neighborhood Health Plan of Rhode Island, Inc., C.A. No. 23-cv-238-MSM-PAS, 2025 WL 1372357, at *1 (D.R.I. May 12, 2025) (court ordered production of complete medical history, especially "highly relevant medical/mental health history for the period preceding, during, and after . . . employment").

Similarly, the facts in issue cabin the temporal scope of medical production. Generally, courts deem relevant the period set out in the pleadings amplified by a pre-injury buffer (often one to three years depending on the facts) as a reasonable approach to ensuring that the defense receives the relevant pre-injury records needed for consideration of the physical and mental health medical conditions that the claimant has squarely put in issue. E.g., Hood-Harrison v. HallKeen Mgmt., Inc., C.A. No. 23-481-WES, 2024 WL 4008547, at *1-2 (D.R.I. Aug. 30, 2024) (ordering production of complete medical records with three year buffer); see Rogers v.

Orleans Par. Sheriff Off., Civil Action No. 22-5303, 2025 WL 3760764, at * 9-10 (E.D. La. Dec. 30, 2025) (medical production limited to one year prior to any diagnoses of conditions alleged to cause disability).

In determining how fairly and proportionally to determine what must be provided and (of what is provided) what may be used in the litigation, courts may decline to accept the claimant as qualified to curate her own medical production. Rimes v. Claire's Stores Inc., Case No. CV 22-01488-SVW(JEMx), 2022 WL 18278430, at *2 (C.D. Cal. May 25, 2022) ("The Court rejects Plaintiff's proposal that she should review the documents and decide what should be produced. Plaintiff is not qualified to determine what aspects of her medical records are relevant to her claim of emotional distress and a protective order will suffice to accommodate her privacy interests."); see Hood-Harrison, 2024 WL 4008547, at *2 n. 2 (finding plaintiff's self-selected production inadequate, complete production ordered because claimant cannot "cherrypick[] what has been produced so [that defendants] do not yet have a complete set of relevant records"). In that circumstance, the Court may establish a mechanism for the determination of what is highly confidential and only marginally or not relevant calibrated to maximize a claimant's privacy while ensuring that the defendant's right to mount a defense is unimpaired. See Tavares v. Enterprise Rent-A-Car Co., C.A. No. 13-5215, 2014 U.S. Dist. LEXIS 95604, at *10 (D.R.I. June 25, 2014) (court orders complete production of highly confidential medical records that include highly confidential but irrelevant information (pertaining to family members) with post-production review based on claimant's input of what should be redacted or destroyed and limiting party and attorneys-of-record access to and use of redacted versions). Thus, basic fairness requires that the claimant's privacy concerns must give way to the right of the other party, for example, "to explore the truth of the [party's] allegations that he/she suffered . . . as a

result of the [other party's] conduct and to determine whether the [party] suffered any preexisting . . . emotional distress that may be the (or an) actual cause of the distress." Rogers, 2025 WL 3760764, at *8 (internal quotation marks omitted) (alterations in original).

The relevant medical record should be produced with an appropriately crafted confidentiality order. Walsh v. Tara Constr., Inc., Civil Action No. 19-10369-LTS, 2021 WL 12094327, at *2 (D. Mass. Oct. 28, 2021). In an employment case, where the claimant still works for defendant, attorney's-eyes-only access may be appropriate at least until the irrelevant and marginally relevant but highly sensitive materials are removed. See Henne v. Great River Reg'l Libr., Court File No. 19-cv-2758 (WMW/LIB), 2021 WL 6804560, at *5 (D. Minn. Jan. 4, 2021) (with protective order to be entered, court declines to find "'attorneys' eyes only' provision is necessary to prevent Plaintiff's former supervisors and colleagues from being shown her medical information" where employment is terminated).

## V. Analysis

The Court begins the analysis by focusing on the preclusive effect (if any) of the Superior Court Discovery Order. Plaintiff argues that this Court cannot deploy its discretion to address the discovery issues presented but must adopt the Superior Court Discovery Order because it is constrained by the doctrine of collateral estoppel, the Full Faith and Credit Act (28 U.S.C. § 1738), principles of comity and the prevention of forum shopping. ECF No. 19 at 16-22. I do not agree. For starters, Rhode Island law is clear that a discovery order is not a final judgment on the merits, which is essential for collateral estoppel. State v. Pacheco, 161 A.3d 1166, 1172 (R.I. 2017); see Burford v. Estate of Skelly, 699 A.2d 854, 856 (R.I. 1997) (per curiam) (discovery order of probate court lacks finality); Francis v. Barber Auto Sales, Inc., 454 A.2d 703, 705 (R.I. 1983) (discovery order not appealable). And federal law is clear that full-faith-

and-credit applies only to a final judgment. Muniz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000) (citing 28 U.S.C. § 1738). The Court also rejects Plaintiff's contention that DDS has somehow engaged in improper forum shopping, an argument that is particularly hollow where it was Plaintiff who chose to litigate her claims simultaneously in state and federal court. As to comity, it is discretionary and does not require the federal court to abandon its independent obligation to manage discovery. Mast, Foos & Co. v. Stover Mfg Co., 177 U.S. 485, 488 (1900); see also Lisowski v. Walmart Stores, Inc., No. 21-2501, 2022 WL 2763698, at *2 (3d Cir. July 15, 2022) (comity is discretionary doctrine).

In exercising such discretion as comity requires, this Court has carefully considered the Superior Court Order including with regard to proportionality.[8] The Court declines to follow the Superior Court Order to the extent that (1) it failed to allow discovery of a pre-disability buffer period of at least one year (that is, beginning on January 1, 2015); (2) it allowed irrelevant and burdensome discovery of mental health issues prior to (with a buffer, as I find relevant, of three years) the period limned by the Complaint, which alleges that related mental health treatment did not begin until 2023, making mental health material showing the presence and absence of symptoms and diagnoses discoverable from January 1, 2020; (3) it failed to allow DDS to obtain discovery essential to its defense regarding the critically relevant factual issue of when symptoms and active diagnoses were in decline or absent; (4) it failed to create a fair, proportional and efficient process for separating the relevant material from irrelevant material in the unified medical record of a single relevant provider, placing the burden on medical providers to somehow determine relevancy; and (5) it failed to provide for attorney's-eyes-only protection

[8] During the hearing, the Court explored whether its order could or should be adjusted to reduce burden in light of the ongoing discovery in the Superior Court case. The parties concurred that there is no need to do so because the Superior Court subpoenas have not been served.

to ensure that DDS (Plaintiff's current employer) does not have access to and cannot use irrelevant material that may be mixed in with the relevant material produced by a single provider in a unified medical record.

Turning to the merits of what is in issue, the Court finds that Plaintiff's claim of respiratory issues caused by her exposure to the DDS building, leading to serious symptoms, infectious disease, unwellness, adverse impact on the ability to work and absence from work, juxtaposed with the absence of such conditions and symptoms when she was on leave, on vacation or working remotely, squarely places in issue and renders relevant all of her medical interactions (including those reflecting the absence of treatment) with the relevant providers (as identified in discovery) for the period beginning January 1, 2015, that is, from 2016 when the allegations in the Complaint begin, with a one-year backward buffer.[9] The Court finds that this information is critical to the defense and is not effectively available through other means, as well as that Plaintiff has waived her right to prevent DDS from pursuing such discovery. See Jones, 2026 WL 208628, at *3 n.2. The Court specifically finds unpersuasive Plaintiff's argument that the public policy underpinning the Rehabilitation Act means that, despite its relevance, this medical discovery must be truncated to avoid discouraging claimants from filing claims, even though the result would be to hamstring DDS's ability to defend. Put differently, the public interest and DDS's need for these records outweighs Plaintiff's privacy concerns.

The Court acknowledges that, with providers who work with a medical group (or in a hospital setting), a complete medical record is likely to be a unified electronic record that may encompass medical interactions not just with the relevant providers but also with other providers

[9] The Court finds that one year is a sufficient buffer for this case in light of the age of records in issue and the description in the pleading of the abruptness of the onset and cessation of symptoms. If the produced materials reveal that a larger buffer is necessary, DDS may return to the Court for relief from this limit.

in the same medical group or at the same hospital, whose treating notes may be irrelevant or marginally relevant implicating privacy considerations (such as records reflecting [redacted]). Accordingly, the Court orders that the parties adopt a mechanism to remove or redact such material, while not impairing DDS's ability to make its own legal/factual judgments about what is relevant. If the parties are unable to agree on a mechanism, the Court orders that the parties shall use the following default mechanism:

(a) All of the embargoed/produced records shall be limited to outside-attorney's-eyes-only[10] access (that is, because Plaintiff is still employed, DDS may not access them) until the following protocol is completed;

(b) DDS's outside counsel shall designate an attorney (with supporting staff and expert assistance as necessary) to work with Plaintiff's counsel to identify irrelevant and marginally relevant but disproportional (due to privacy concerns) records;

(c) The embargoed/produced records shall be opened in the presence of DDS's designated attorney and Plaintiff's counsel;

(d) Any embargoed/produced records for which Plaintiff's counsel requests removal or redaction shall be discussed and, if DDS's designated attorney agrees with the request, shall be removed or redacted and the non-redacted version removed, with Plaintiff's counsel to be clearly advised of which removal/redaction requests are accepted and which are not accepted;

(e) The DDS designated attorney shall make the determination whether to acquiesce to or reject Plaintiff's counsel's request for removal or redaction based on a good faith determination of what is relevant to the claims and defenses in this case;

[10] In the circumstances here, this means an attorney of record from the Office of the Rhode Island Attorney General.

(f) Once the removals and/or redactions are completed, the remaining material shall no longer be embargoed and may be used in this litigation provided that the material shall be treated as confidential with access limited to the parties, the attorneys, their staff and experts and any witness who may be asked to testify about the document.

As to mental health discovery, the Court is mindful of the heightened privacy concerns that are implicated whenever mental health treating records are in issue. Accordingly, the Court has focused on the Complaint's allegation that mental health treatment related to the claims in issue did not begin until 2023. In light of the facts alleged that reveal the complexity of Plaintiff's mental health allegations, as well as the reality that Plaintiff's motion did not ask for a more limited time period for mental health records, the Court finds that a three-year buffer is appropriate and hereby orders the production of complete medical records from each of the mental health providers in issue (including Butler Hospital) for the period from January 1, 2020. As with records relating to treatment for somatic conditions, the Court finds that this information is critical to the defense of this litigation and is not effectively available through other means, as well as that Plaintiff has waived her right to prevent DDS from pursuing such discovery. Mindful of the factors recited by Butler Hospital in reliance of the Heath Care Information Act, the Court further finds that the public interest and DDS's need for these records outweighs Plaintiff's privacy concerns. As to potential redaction or removal of mental health records that are irrelevant or marginally relevant but disproportionally burdensome due to privacy concerns (such as [redacted]), the Court orders that the parties either reach agreement for a mechanism or that they use the default mechanism set forth above, with confidentiality protected as required by that protocol.

The Court specifically declines the request in both motions to quash that it should perform an *in camera* review to make page-by-page relevancy determinations with respect to all of the embargoed/produced medical records for the periods in issue. Apart from the burden on judicial resources, the Court lacks the expertise to assess what is relevant to the medically complex claims and defenses in issue, including that it lacks an understanding of the facts sufficient to determine whether a record reflecting the timing and circumstances of the presence and/or absence of alleged respiratory, related somatic conditions and mental health concerns is or is not relevant.

## VI. Conclusion

Based on the foregoing, Plaintiff's motion to quash and for a protective order (ECF No. 19) is GRANTED in part and DENIED in part,[11] including that the Court orders that certain of the embargoed/produced material shall be treated as confidential, with access limited to attorneys only (and their staff and experts) for the early phase of the default mechanism as set forth above. Relatedly, based on the determination of Plaintiff's motion to quash, and the findings set forth above, Butler Hospital's motion to quash (ECF No. 21) is DENIED, provided that DDS may review and use its embargoed/produced material with the limitations and confidentiality protections set forth above.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 19, 2026

[11] Plaintiff has requested that the Court stay this determination to allow time for her to file an appeal pursuant to Fed. R. Civ. P. 72(a) through final resolution of such an appeal. As discussed at the hearing, this request is granted – the Court hereby stays this Order for fourteen days from its issuance or until a Fed. R. Civ. P. 72(a) appeal is filed and determined, provided that the parties are directed to meet and confer to identify work on this discovery that may proceed in the interest of avoidance of unnecessary delay. This stay order is without prejudice to DDS asking the District Court to end the stay at any time.